**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

|  |  |  |
|---|---|---|
| NEUROSHIELD NETWORK SE, LLC | ) ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) ) ) | **COMPLAINT AND PETITION TO CONFIRM ARBITRATION AWARD AND ENTRY OF JUDGMENT** |
| v. | ) ) ) |  |
| AMBETTER | ) ) |  |
| Defendant, | ) |  |

Plaintiff, NeuroShield Network SE, LLC, by and through its attorneys, Callagy Law, P.C., submits this Complaint and Petition against AMBETTER, stating as follows:

**PRELIMINARY STATEMENT**

1. This action arises from Defendant's systemic and unlawful refusal to honor arbitration awards issued under the Federal No Surprises Act. Plaintiff, a medical provider specializing in intraoperative monitoring services, is just one of hundreds of providers who have been forced to seek judicial enforcement after Defendant's blatant disregard for binding dispute resolution outcomes.

2. The claims at issue here are not isolated incidents but part of a pervasive pattern and practice of noncompliance by AMBETTER, which has repeatedly and willfully failed to remit payments awarded through the Independent Dispute Resolution (IDR) process mandated by federal law.

1

3. Across numerous cases, certified IDR entities have determined that Defendant grossly underpaid out-of-network providers and ordered additional reimbursement.

4. Yet, Defendant has engaged in a deliberate and widespread scheme to evade its legal obligations, refusing to make payments even when legally required to do so. Plaintiff alone has secured numerous arbitration awards in its favor, each requiring Defendant to remit payment, yet Defendant has systematically failed to comply.

5. Defendant's misconduct extends beyond this individual matter. Its ongoing failure to pay valid arbitration awards represents a calculated effort to subvert the No Surprises Act, systematically depriving medical providers of compensation they are legally entitled to receive.

6. This bad-faith scheme is designed to obstruct and undermine the IDR process, discouraging providers from seeking fair reimbursement and effectively nullifying the protections Congress enacted to ensure fair payment practices in the healthcare industry.

7. Despite multiple good-faith efforts by Plaintiff to communicate with Defendant and secure payment, including repeated follow-ups and formal complaints to the Centers for Medicare & Medicaid Services (CMS), Defendant has refused to act. Plaintiff has exhausted all reasonable efforts to resolve these matters without litigation, yet Defendant remains steadfast in its refusal to comply with binding legal obligations.

8. As a result, Plaintiff has no choice but to once again seek judicial intervention to compel Defendant to act in accordance with the law. Plaintiff therefore seeks an order confirming the arbitration awards pursuant to 9 U.S.C. § 9, as well as all unpaid amounts, accrued interest, attorney's fees, statutory damages, among other damages from civil claims.

9.     Beyond enforcing these specific awards, this Court's intervention is critical to halting Defendant's unlawful conduct and ensuring that the IDR process remains an effective and enforceable mechanism for resolving payment disputes.

## PARTIES, JURISDICTION, AND VENUE

10.    Plaintiff is a medical practice specializing in Intraoperative Monitoring services, with a principal place of business at 700 US Highway 46 East Suite 420 Fairfield, NJ 07004.

11.    Upon information and belief, Defendant is engaged in providing and/or administering health care plans or policies in the state of Missouri.

12.    Jurisdiction is proper in the Federal Court for the Eastern District of Missouri as this action is brought pursuant to several federal statutes, including the No Surprises Act, 42 U.S.C. §§ 300gg-111, et seq, and pursuant to 9 U.S.C. § 9 regarding confirmation of arbitration awards.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 Ambetter's principal place of business is within the District, at 7700 Forsyth Boulevard, St. Louis, Missouri 63105.

## FACTUAL BACKGROUND
## PLAINTIFF'S PRE-ARBITRATION AWARD RESOLUTION EFFORTS

14.    Plaintiff is a medical provider that regularly renders critical intraoperative monitoring and other medical services to patients insured under health plans issued or administered by Defendant.

15.    In the ordinary course of its practice, Plaintiff submits Health Insurance Claim Forms (HCFA) seeking reimbursement for the medically necessary services provided to Defendant's beneficiaries.

16.    Despite receiving complete and properly documented claims, Defendant consistently underpays Plaintiff by issuing payments that are drastically below fair market value and insufficient to cover the costs of the services rendered.

3

17. Plaintiff makes every effort to resolve these disputes without resorting to arbitration. After receiving Defendant's inadequate reimbursement, Plaintiff formally disputes the payment and initiates the required 30-day open negotiation period under the Federal No Surprises Act.

18. During this period, Plaintiff communicates with Defendant in good faith, seeking fair payment for the services provided. Plaintiff supplies additional documentation, engages in multiple follow-ups, and attempts to negotiate an appropriate reimbursement amount based on prevailing rates and arbitration precedents.

19. Despite these efforts, Defendant routinely refuses to negotiate in good faith or fails to respond altogether, leaving Plaintiff no choice but to escalate the dispute through the Independent Dispute Resolution (IDR) process.

20. In numerous cases, Plaintiff has been forced to initiate arbitration to secure the fair compensation it is legally entitled to receive. A certified IDR entity then reviews the matter, considers the reimbursement rate set forth by Defendant, and determines the appropriate payment owed to Plaintiff.

21. In the vast majority of cases, the IDR process has ruled in Plaintiff's favor, confirming that Defendant's initial payment was grossly inadequate and requiring Defendant to issue additional reimbursement.

**PLAINTIFF'S POST-ARBITRATION AWARD RESOLUTION EFFORTS**

22. Even after successfully obtaining arbitration awards in its favor, Plaintiff continues to make good-faith efforts to secure payment without resorting to judicial enforcement. Rather than immediately seeking court intervention, Plaintiff attempts to engage Defendant in resolving the matter amicably and ensuring compliance with the binding arbitration decisions.

23. Following the issuance of an arbitration award, Plaintiff sends multiple formal demand letters to Defendant, reminding it of its legal obligation to remit payment within the federally mandated timeframe. These letters outline the award details, reference applicable laws, and request immediate payment to avoid further escalation.

24. Plaintiff also makes direct outreach efforts to Defendant's representatives, including claims processing departments, legal counsel, and payment resolution teams, in an attempt to facilitate payment without the need for further action. Plaintiff submits follow-up requests via phone calls, emails, and provider portals, seeking clarity on any purported delays and offering opportunities for Defendant to address the outstanding balances.

25. Despite these persistent efforts, Defendant consistently ignores or delays responses, failing to provide any valid justification for its continued refusal to comply. In some instances, Defendant acknowledges the arbitration awards but still refuses to issue payment, further demonstrating its bad-faith tactics and disregard for binding legal obligations.

26. Plaintiff also seeks to engage Defendant through regulatory channels, including filing complaints with the Centers for Medicare & Medicaid Services (CMS) regarding Defendant's failure to comply with arbitration decisions. These regulatory complaints serve as yet another attempt to resolve the matter without litigation, yet Defendant remains noncompliant even in the face of potential regulatory scrutiny.

27. Only after exhausting all reasonable efforts to secure payment through correspondence, direct outreach, and regulatory complaints does Plaintiff have no choice but to seek judicial intervention. At this stage, it is not merely a matter of delayed payment but a systemic refusal by Defendant to comply with legally binding arbitration awards, necessitating court enforcement to ensure compliance and prevent further harm to medical providers.

28. Plaintiff's ongoing efforts to resolve these matters outside of court underscore its commitment to fair and lawful resolution. However, Defendant's continued noncompliance leaves Plaintiff with no alternative but to seek judicial enforcement of the arbitration awards, as well as all past due amounts, interest, attorneys' fees, and collection costs.

**THE ARBITRATION AWARDS AT ISSUE IN THIS DISPUTE**

29. As direct evidence supporting this action, Plaintiff is submitting arbitration awards it has obtained against Defendant detailing the arbitration awards that Defendant has failed to pay. The arbitration awards provide a clear and indisputable record of Defendant's systemic refusal to comply with binding arbitration decisions, demonstrating an ongoing pattern of unlawful noncompliance.

30. A true and correct copy of the arbitration awards, identified and attached as Exhibit A to this Complaint, include specific details for each arbitration award, including claim numbers, the amounts awarded, and the deadlines by which Defendant was legally required to remit payment. This data reflects the widespread scope of Defendant's failure to adhere to its obligations and underscores the necessity of judicial intervention to enforce these awards.

31. Upon information and belief, Defendant has willfully failed and refused to remit payment for outstanding awards, totaling **$380,466.86**, in direct violation of their legal obligations.

32. Plaintiff has taken every reasonable step to collect payment on these awards, including repeated demands, direct outreach to Defendant, and regulatory complaints. Despite these efforts, Defendant continues to disregard its legal responsibilities, forcing Plaintiff to bring this action to compel compliance.

33. Plaintiff has done everything in its power to avoid bringing this lawsuit, making extensive efforts to resolve these disputes through direct outreach, negotiations, and regulatory channels. However, Defendant's persistent bad-faith refusal to pay these arbitration awards has left

Plaintiff with no choice but to seek judicial intervention. Without Court enforcement, Defendant will continue to flout its legal obligations, depriving medical providers of the compensation they are rightfully owed under federal law.

## COUNT ONE
## CONFIRMATION OF ARBITRATION AWARD PURSUANT TO 9 U.S.C. § 9

34. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

35. Under 9 U.S.C. § 9, if the parties have agreed that a judgment of the court shall be entered upon the arbitration award, then any party to the arbitration may apply for an order confirming the award, and the court must grant such an order.

36. The arbitration awards at issue were issued pursuant to the Federal No Surprises Act, a federally mandated dispute resolution process.

37. Plaintiff has obtained numerous arbitration awards confirming that Defendant owes specific amounts for medical services rendered. However, Defendant has engaged in a deliberate and systemic pattern of noncompliance, refusing to pay these legally binding awards.

38. Plaintiff has exhausted all reasonable efforts to obtain compliance, including multiple written demands, direct outreach to Defendant's representatives, and formal regulatory complaints, but Defendant continues to ignore its obligations.

39. It is against equity and good conscience to deprive Plaintiff of a remedy to enforce arbitration awards issued in accordance with federal law, particularly when Defendant has demonstrated a pattern of bad-faith refusal to comply.

40. Accordingly, Plaintiff brings this action for an order confirming all applicable arbitration awards, directing Defendant to issue immediate payment, and granting all other relief the Court deems just and proper.

## COUNT TWO
## VIOLATION OF THE FEDERAL NO SURPRISES ACT

41. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

42. Under the Federal No Surprises Act, an out-of-network provider may initiate the Federal Independent Dispute Resolution (IDR) process if, after a mandatory 30-day negotiation period, the parties are unable to agree on the reimbursement rate for medical services.

43. In each case at issue, Defendant failed to offer reasonable payment, forcing Plaintiff to initiate arbitration as provided by the No Surprises Act.

44. The IDR process has consistently resulted in awards in favor of Plaintiff, confirming that Defendant's initial payments were grossly inadequate and requiring additional reimbursement.

45. Despite binding arbitration rulings, Defendant has systematically refused to pay the amounts awarded, violating the express requirements of the No Surprises Act.

46. Plaintiff has made numerous good-faith efforts to obtain payment, including repeated demands, direct communications, and regulatory complaints, but Defendant has failed to comply with the law.

47. Defendant's refusal to honor these arbitration awards is a direct violation of the No Surprises Act and undermines the integrity of the federally mandated dispute resolution process.

48. Plaintiff seeks an order compelling Defendant to pay the arbitration awards in full, along with interest, attorneys' fees, and all other relief necessary to enforce the requirements of the No Surprises Act.

## COUNT THREE
## BAD FAITH INSURANCE PRACTICES

49. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

50. Defendant, as an insurer, is responsible for reimbursing out-of-network providers for covered medical services, including those rendered by Plaintiff.

51. Plaintiff has secured numerous arbitration awards confirming that Defendant is legally required to issue additional payment for services rendered.

52. Despite these legally binding rulings, Defendant has arbitrarily and recklessly refused to pay the awarded amounts, demonstrating a complete disregard for its legal obligations under Missouri law.

53. Defendant has failed to provide any legitimate justification for its refusal to pay and has made no meaningful effort to resolve these disputes, even after multiple written demands, outreach attempts, and regulatory complaints.

54. Under both statutory and common law, an insurer is required to promptly pay claims and may be held liable for additional damages, including penalty interest and attorneys' fees, when it fails to do so without reasonable cause for a period exceeding 30 days after due demand.

55. Defendant's continued and deliberate refusal to pay these arbitration awards, despite clear legal obligations and multiple attempts by Plaintiff to resolve the matter outside of litigation, constitutes bad faith under Missouri law.

56. As a direct result of Defendant's arbitrary and reckless failure to pay, Plaintiff has incurred significant financial harm, including legal costs, administrative burdens, and disruption to its medical practice.

57. Plaintiff seeks payment of all arbitration awards, statutory penalty interest, attorneys' fees, and all other relief permitted under Missouri law.

## COUNT FOUR
## UNJUST ENRICHMENT

58. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

59. Plaintiff provided medically necessary services to insured patients, which directly benefited both the patients and Defendant by fulfilling Defendant's obligations to its policyholders.

60. Defendant has received the benefit of these services without paying the full amounts determined to be due through the IDR process.

61. Defendant's continued refusal to pay the awarded amounts unjustly enriches Defendant at Plaintiff's expense, as it allows Defendant to fulfill its insurance obligations without compensating Plaintiff as required by law.

62. Under principles of equity and good conscience, Defendant should not be permitted to retain the benefits of Plaintiff's services without providing fair compensation as determined by arbitration.

63. As a direct result of Defendant's unjust enrichment, Plaintiff has suffered financial harm and seeks full payment of the amounts awarded, plus interest, attorneys' fees, and any other relief deemed just and proper by the Court.

## COUNT FIVE
## QUANTUM MERUIT

64. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

65. Plaintiff rendered necessary, reasonable, and customary medical services to insured patients, expecting fair compensation for the services provided.

66. Defendant was fully aware that Plaintiff would render these services and that compensation would be expected.

67. Defendant initially issued payments that were grossly inadequate, prompting Plaintiff to seek arbitration under the Federal No Surprises Act.

68. The arbitration process resulted in binding determinations of the reasonable value of the services rendered, yet Defendant has refused to pay the amounts awarded.

69. By failing to pay the full value of the services rendered, Defendant has unfairly retained the benefit of those services while avoiding its financial obligations.

70. Equity demands that Plaintiff be compensated for the reasonable value of the medical services provided, as determined by a neutral third party through arbitration.

71. As a direct result of Defendant's failure to pay the fair value of services rendered, Plaintiff has suffered financial harm and seeks damages in the full amount awarded, plus interest, attorneys' fees, and any other relief the Court deems appropriate.

## COUNT SIX
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

72. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

73. Plaintiff operates a medical practice that provides critical intraoperative monitoring services to patients insured under health plans issued or administered by Defendant.

74. Plaintiff relies on referrals from physicians and established relationships with patients to sustain its medical practice.

75. Defendant has engaged in a systemic and deliberate scheme to avoid payment of arbitration awards issued under the Federal No Surprises Act, despite being legally obligated to pay.

76. Defendant's refusal to comply with arbitration awards directly interferes with Plaintiff's ability to operate its business, depriving it of the compensation necessary to continue providing services, maintain operations, and investing in patient care.

77. Defendant's conduct is designed to discourage Plaintiff and other out-of-network providers from utilizing the arbitration process, obstructing the lawful reimbursement mechanism Congress established under the No Surprises Act.

78. Defendant's refusal to pay legally mandated amounts has disrupted Plaintiff's relationships with patients and referring physicians, damaged its financial stability, and forced it to divert resources toward enforcing awards instead of focusing on medical care.

79. Defendant's actions constitute intentional and improper interference with Plaintiff's business relationships, causing economic harm and reputational damage.

80. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial financial losses, including lost revenue, administrative costs, and damage to its professional standing.

81. Accordingly, Plaintiff seeks compensatory and punitive damages, as well as all other relief this Court deems just and proper.

## COUNT SEVEN
## DECLARATORY JUDGMENT

82. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

83. An actual and justiciable controversy exists between Plaintiff and Defendant concerning Defendant's systemic refusal to pay arbitration awards issued under the Federal No Surprises Act.

84. The No Surprises Act mandates that once an arbitration award is issued, the insurer must remit payment within 30 days. Despite this clear legal obligation, Defendant has engaged in a widespread pattern of noncompliance.

85. Plaintiff has exhausted all reasonable efforts to secure payment, including repeated written demands, direct outreach to Defendant's representatives, and regulatory complaints, yet Defendant has refused to comply.

86. Defendant's conduct has created uncertainty regarding the enforceability of arbitration awards, undermining the federally mandated dispute resolution process and harming medical providers across the industry.

87. A declaratory judgment is necessary to affirm that Defendant is legally obligated to pay all arbitration awards issued in Plaintiff's favor and that its continued noncompliance violates federal law.

88. Plaintiff seeks a declaration from this Court confirming Defendant's obligation to immediately pay all outstanding arbitration awards and enjoining Defendant from further unlawful noncompliance.

## COUNT EIGHT
## NEGLIGENCE

89. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

90. Defendant, as an entity engaged in administering healthcare reimbursement and processing claims, owed a duty of care to act in accordance with federal and state laws, including its obligations under the No Surprises Act.

91. This duty includes the responsibility to handle arbitration awards fairly, in good faith, and in compliance with legal requirements, ensuring that payments are made promptly and accurately.

92. Defendant breached this duty by engaging in a deliberate and systemic pattern of ignoring legally binding arbitration awards, failing to remit payment despite clear legal mandates requiring it to do so.

93. Defendant's failure to pay is not the result of an administrative oversight but reflects a reckless disregard for its legal obligations and a pattern of wrongful noncompliance with federal law.

94. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered financial harm, including the loss of substantial revenue, increased administrative burdens, and legal expenses incurred in efforts to secure payment.

95. It is against equity and good conscience for Defendant to escape liability for its failure to adhere to fundamental legal obligations.

96. Accordingly, Plaintiff seeks an award of all unpaid amounts, statutory interest, attorneys' fees, and all other relief this Court deems just and appropriate.

## COUNT EIGHT
## PROMISSORY ESTOPPEL

97. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

98. Defendant, through its obligations under the No Surprises Act and its participation in the Independent Dispute Resolution (IDR) process, made a clear and definite promise to pay arbitration awards issued in Plaintiff's favor.

99. Defendant should have reasonably expected that Plaintiff would rely on its obligations under federal law, continue providing medical services to insured patients, and pursue arbitration as a valid means of resolving payment disputes.

100. Plaintiff reasonably relied on this promise by rendering medically necessary services, engaging in arbitration instead of pursuing alternative remedies, and incurring significant administrative and legal expenses.

101. Despite prevailing in arbitration, Plaintiff has not been paid the awarded amounts, and Defendant's refusal to pay has resulted in substantial financial harm, including lost revenue, administrative burdens, and litigation costs.

102. Enforcement of Defendant's promise is necessary to prevent injustice, as Plaintiff complied with the No Surprises Act's dispute resolution process in good faith and should not be penalized for relying on the arbitration system Defendant agreed to follow.

103. Accordingly, Plaintiff seeks an order compelling Defendant to immediately pay all outstanding arbitration awards in full, in addition to pre- and post-judgment interest, attorneys' fees, and all other relief the Court deems just and equitable.

**WHEREFORE**, Plaintiff respectfully moves this Court to:

1. Confirm the arbitration awards pursuant to 9 U.S.C. § 9;

2. Enter judgment against Defendant for all unpaid amounts;

3. Award statutory damages and penalties;

4. Award attorneys' fees, costs, and interest; and

5. Grant any further relief the Court deems just and equitable.

CALLAGY LAW, PC
Attorney for Plaintiff

 

By: */s/ Jennifer Liniado*
Jennifer Liniado, Esq.
Bar No. 494011(GA)
650 From Road, Suite 240
Paramus, NJ 07652
Tel: (201) 261-1700
Fax: (201) 549-6236
Email: jliniado@callagylaw.com

Dated: April 16, 2025